Reading City, Appellant, *v.* Charles H. Krause's Estate. | 167　　23
| 35 SC　56

*Tax lien —Payment—Act of May 23, 1889, art. XV.*

Under the act of May 23, 1889, art. xv, P. L. 277, if taxes appear marked upon the books of the city treasurer as having been duly paid, it will not prevent the city from recovering the taxes which are actually unpaid, but the city treasurer has no power to certify them as unpaid nor the city solicitor to register them as liens, and therefore a lien for the taxes cannot be entered.

Argued March 5, 1895. Appeal, No. 181, July T., 1894, by plaintiff, from judgment of C. P. Berks Co., Sept. T., 1893, No. 5, for defendant non obstante veredicto. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Scire facias sur municipal lien for taxes. Before ENDLICH, J.

At the trial the jury returned a verdict for plaintiff.

The court reserved defendant's points which were as follows :

" 1. The defendant having proved by the testimony of the city solicitor, Mr. Rourke, that the lien for the city taxes on which this suit is brought, was not registered in the city lien docket by the city solicitor or in pursuance of a ' detailed statement of taxes due on real estate (of Charles H. Krause)

placed in his possession by the city treasurer,' as directed by the act of 1874, but that said taxes being for the years 1889, 1890 and 1891, were registered for the first time in June, 1893, on the basis of three receipts for taxes for said years, respectively, signed by John Obold, city treasurer, in favor of John Obold, trustee of Charles H. Krause estate, which were held by Mr. Obold, during the time he acted as city treasurer, as vouchers of the trust estate, and it having been further shown that said receipts, with other private papers of Mr. Obold, remained in the room of the city treasurer, when Mr. Obold was compelled to vacate his office in January, 1893, and upon his order were delivered by Mr. Lance, the succeeding treasurer, to H. P. Keiser, Esq., the attorney for Mr. Obold, and retained by him; that said receipts were never in the possession of the city solicitor, except for a short time in June, 1893, when at his own request he obtained them from Mr. Keiser, for inspection, and soon after returned them to their former custody.

" The defendant asks the court to instruct the jury that the city solicitor had no authority to register said taxes in the city lien docket, and that no recovery can be had on the lien so registered." [1]

" 2. It having been further shown by the defendant that the taxes charged against the estate of Charles H. Krause in the city tax duplicate for 1889, 1890 and 1891 were marked paid by being severally checked off with the numbers of the receipts for their payment, issued by the city treasurer, as evidence thereof, and that the stubs of the several books in the treasurer's office for those years, from which the receipts are detached and furnished to persons paying taxes, show the payment of the Krause city taxes by John Obold, trustee of the Krause estate, on the following dates respectively, viz: December 2, 1889, $50.63; November 1, 1890, $64.13, and November 2, 1891, $39.00; there was no proper or competent evidence in the books and accounts of the treasurer's office to show that the taxes assessed against the Krause estate for said years were unpaid, nor had the treasurer who succeeded Mr. Obold any means of furnishing 'a detailed statement' of the taxes due on the Krause real estate for said years to the city solicitor as directed by the act of assembly for the purpose of filing liens for the same.

" As, therefore, the city treasurer neither did nor could furnish such 'detailed statement' from anything that appeared in his office, there can be no recovery on the liens filed by the city solicitor on his own motion, as it might lead to great oppression and abuse." [2]

On a rule for judgment non obstante veredicto, ENDLICH, J., filed the following opinion :

" The only question which it is necessary to consider in disposing of these rules is that raised by the points reserved,— whether, under the undisputed circumstances recited therein, it was competent for the city of Reading to lay the lien upon which this sci. fa. issued. If there was no authority for that, there can be no recovery. Upon the question of the right to lay the lien, the fact, set forth in the points reserved, would seem to be necessarily controlling, that, upon the books of the city treasurer, the taxes sought to be thus enforced, appear marked as having been duly paid, during the years for which they were respectively assessed. The conclusive effect of this entry, so far as the right of lien is concerned, is manifest from a proper reading of the statutory provisions by which the collection of taxes is regulated. These provisions are contained in the act of May 23, 1889, P. L. 277, art. xv, (pages 317 et seq.) Under them, the assessment being completed, and the copies of it by wards having been placed into the hands of the city treasurer on or before June first, the taxes are immediately payable to him, with the addition of certain percentages after September first (sec. 7). On and after November first it is his duty to place into the hands of the tax collectors duplicates of such taxes as then remain unpaid (sec. 8). Within five months thereafter, each tax collector, having paid over monthly sums collected by him, indicating the properties, which thereupon are to be credited by the treasurer upon his books (sec. 9), is required to make out and deliver to the treasurer a schedule of the taxes still unpaid in his duplicate, with descriptions of the properties liable therefor, etc. (sec. 10), and these schedules, or a copy thereof, the treasurer is then to certify to the city solicitor, to be registered by him as liens in the prothonotary's office (sec. 11). This method but slightly differs from that provided by the act of May 24, 1874, P. L. 230, sec. 36 (pages 249, 250). Thereby the treasurer was required to

receive taxes up to the first day of January succeeding the completion of the assessment, after which date duplicates were to go into the hands of the collectors; and after January first of each year, the treasurer was to place correct and detailed statements of taxes then remaining unpaid into the city solicitor's hands, who was thereupon to register them as liens.

"That, under either enactment, the certification of taxes as unpaid by the treasurer is a condition precedent to the right of the solicitor to register them as liens can admit of no doubt, either upon the express terms of the statute or upon principles of common sense. There is nothing in his powers or duties as defined by sec. 40, act 1874, or art. IX, act 1889, that gives him any right to lay liens in the name of the city except for such claims as come to him from the proper and appointed source. Neither is there any authority in him to overhaul the books or accounts of any other municipal officer with a view of determining himself whether this or that claim has been paid, or whether a lien should be filed for the one or the other. To invest him with a power or an authority such as I have indicated would be to introduce infinite confusion into the municipal affairs, and the existence of either is not, as I understand the position of the city solicitor in this case, asserted by him. As the law officer of the municipality, charged with the 'superintendence, direction and control' of the 'law matters of the city,' the validity of his action in instituting any legal procedure in its name must depend upon his right to act either given by specific statutory language or by the proper department of the municipal government under a general statutory direction. His power to lay a lien for alleged unpaid taxes being thus conditioned, there can be no pretense that the requirement of their certification to him by the treasurer is merely directory, and that, if they are brought to his notice in any other way, he may still exercise the power. Where a thing required to be done is a condition precedent to the exercise of a power granted or the performance of a duty imposed, it is necessarily essential to the existence of the power or duty, and being of the essence thereof, cannot be anything but mandatory: Norwegian Str., 81 Pa. 349, 354. Of course, the direction as to the time when the certification is to be made, etc., does not stand upon the same plane with the requirement of certification itself.

The former may very well be deemed directory only, upon the familiar principle that, where a statute fixes a time for the performance of a duty by public officers and there is no substantial reason apart from the statute itself, from other statutes or from the consequences of delay, why the act might not be as well done at some other than the appointed time, the naming of the latter will ordinarily be so treated: State v. Lean, 9 Wis. 292, and see Pittsburg v. Coursin, 74 Pa. 400; Magee v. Commonwealth, 46 Pa. 358; Torrey v. Millbury, 21 Pick. (Mass.) 64. In the present case, however, the difficulty is not merely as to the time when the city solicitor received the notice of these taxes as unpaid. The trouble is that there was admittedly no certification of them to him by the treasurer for the purpose of registering them as liens, in conformity with either the act of 1874 or that of 1889.

"Neither under the circumstances, could there have been any such certification. It is too manifest to admit of any discussion that the statement or certificate to be placed into the hands of the solicitor by the treasurer, as contemplated by either statute, is not one to be made up by the treasurer upon the basis of his personal knowledge apart from or in disregard of the records required to be kept by him. The subjecting of a citizen's property to a lien for taxes alleged to be unpaid, is entirely too serious a matter to permit the imputation of any such design to the legislature. Obviously, the statement or certificate of the treasurer, in so far as it can become authority for the imposition of a lien, must be based upon the facts disclosed by his books, and cannot contradict them. If it were otherwise, no man could buy a property within the limits of the city, without running the risk of having it charged in his hands with taxes assessed years before, though, before purchasing, he had examined the municipal records and found them to declare the fact of payment, and, of course, there could be no defense for him if the city could show that the entries made by the treasurer were false. The hardship of holding the city bound, to the extent of forbidding a lien, by the act of its treasurer, honest or dishonest, cannot be compared with the disastrous consequences of the opposite doctrine to the property holder. The former has its remedy upon the bond given by the treasurer; the latter might have practically no remedy.

The community can guard against frauds upon itself by the selection of a faithful official; the individual has ordinarily no alternative but to put up with any one chosen by a majority of the voters.   In the present case, the books of the city kept by its treasurer showed payment of the taxes for which this lien was laid.   It was, therefore, beyond the power of any succeeding treasurer to certify them as unpaid, and as a necessary consequence, beyond the power of the solicitor to register them as liens.   This statement does not involve a denial of the right of the city to recover taxes, marked paid upon its books, but in fact unpaid, from the property holder against whom they are assessed.   It goes no further than to negative the right to enforce them by a lien against the property itself in the first instance.   The verdict of the jury, under the charge of the court as to what constitutes payment of taxes by one who is at the same time city treasurer, establishes the fact that the taxes were not paid.   I have no doubt as to the correctness of the instructions and I am not called upon to express any as to the correctness of the finding of the jury upon the single question submitted to it.   But I am quite clear, that, notwithstanding that finding, there can be no judgment upon it for the city. Of course, there is neither in this conclusion, nor in what has been said as leading up to it, anything that can reflect upon the action of the city solicitor in instituting this proceeding. The questions raised by it are important ones, and being, at least in some aspects, fairly debatable and unsettled by any previous adjudication, they are such as, under existing circumstances and in view of pending litigation between the city and the bondsmen of the defaulting treasurer, might properly be brought before the court; and the verdict of the jury, though ineffectual in this case, may not be without value to the city.

" The rule for a new trial is discharged and the rule for judgment non obstante veredicto is made absolute."

*Errors assigned*, among others, were (1, 2) in entering judgment for defendant non obstante veredicto on the two points reserved, quoting points.

*William J. Rourke*, city solicitor, for appellant.—The provisions of the act of May 23, 1889, requiring certification of

schedule and taxes, are directory, and not mandatory. Norwegian Str., 81 Pa. 354; Am. & Eng. Ency. of Law, vol. 23, p. 153; Pittsburg v. Coursin, 74 Pa. 400; Sedgwick's Stat. & Const. Law, 368; Torrey v. Millbury, 21 Pick. 64.

There has been a substantial, although possibly not a literal, compliance with the act, and that is sufficient in this case.

There was no actual payment of the taxes for 1890 and 1891: 2 Greenleaf on Evidence, 13th ed. 516; Rap. & Lowr. Law Dict., Payment; Manice v. H. R. R., 3 Duer (N. Y.) 426; Tolman v. Man. Ins. Co., 1 Cush. (Mass.) 73-76; Beals v. Home Life Ins. Co., 36 N. Y. 527; Thompson v. Kellogg, 23 Mo. 281; Rhoads v. Chesson, Busbee Law Rep. (N. C.) 336; Bank of Slatesville v. Waddell, 100 N. C. 338; State Bank v. Welles, 3 Pick. (Mass.) 394.

Anything is a payment which the creditor accepts as a payment, or for the extinguishment of the debt due him: Ormsby Coal Co. v. Bestwick, 18 Atl. Rep. 538; Bailey v. Pittsburg, 69 Pa. 334; Fullerton v. Mobley, 15 Atl. Rep. 856; Curcier v. Pennock, 14 S. & R. 51; Levy v. Bank of U. S., 1 Binn. 27; Pearl v. Clark, 2 Pa. 350.

Whether the transaction amounts to a payment, is a question of fact for the jury: Binford v. Adams, 104 Ind. 41; Monticello v. Grant, 104 Ind. 168.

*A. G. Green, Herbert R. Green* with him, for appellee, cited: Act of May 23, 1889; Norwegian Street, 81 Pa. 349; Veazie v. China, 50 Me. 518; Siter's Case, 4 Rawle, 483.

PER CURIAM, March 18, 1895:

The taxes for which the municipal lien in this case was filed appear upon the books in the office of the city treasurer to be paid. The question on which this case turns is therefore not whether they are in fact paid, but whether the necessary preliminary steps have been taken to authorize the filing of the lien. Upon this question we agree with the learned judge of the court below. The lien is the creature of a statute and if the directions of the statute have not been complied with the right to the lien does not exist. The fact that the directions of the statute have not been complied with is made very clear by the learned judge, and this sustains the conclusion reached by him that the lien is without legal authority or value.

The judgment is therefore affirmed.