Opinion by
Porter, J.,
■ The defendants executed and delivered to the Pennsylvania Trust Company-two mortgages which were duly recorded on June 22, 1899, creating a lien upon real estate in the city of Scranton. The property was, on March 31, 1904, sold under proceedings upon these mortgages, and the questions presented by this record arise out of the distribution of the proceeds of that sheriff’s sale. The mortgages held by the plaintiff were, at the time they were recorded, a first lien, so far as shown by the record. The city of Scranton presented a claim of $400.02 for taxes assessed in the year 1895, and a claim of $353.06 for taxes assessed in the year 1899. The taxes assessed in the year 1895 had never been entered of record in the office of the prothonotary of the county; and the taxes for the year 1899 were not entered of record in said office until January 3, 1903. The taxes were the general levies by the city, for the years respectively, and the city was at the time they were *55 made a city of the third class. The court below awarded to the city the amount of the taxes claimed and the plaintiff, the mortgagee, appeals. The only question presented is whether the general levy of taxes by a city of the third class, at the time the taxes in question were assessed, became a perpetual hen upon the real estate assessed, without regard to whether such taxes were ever entered of record in the office of the prothonotary of the county, or not.
The learned judge of the court below was of opinion that the question was to be determined solely under the provisions of the eleventh and twelfth sections of article XV of the Act of May 23, 1889, P. L. 277, providing for the government of cities of the third class, as amended by the Act of May 23,1895, P. L. 118; that the provisions of the eleventh section of that statute which require the registration of taxes in the office of the prothonotary of the proper county are merely directory, and that the taxes claimed by the city had, as soon as assessed, become a hen upon the property which would continue without limitation and without further action by the municipal authorities. We are convinced, after consideration of the various statutes bearing upon the question, that the conclusion of the court below was erroneous.
The Act of May 4,1889, P. L. 79, entitled; “An act limiting the duration of the hen of county, city, borough, township and school taxes, and municipal improvement -claims,” provides that no such taxes, “levied or assessed, shall remain a hen on real estate for a longer period than two years from the time of such levy or assessment, unless the same be entered of record in the prothonotary’s office of the proper county in which such real estate is situate.” The eleventh section of the Act of May 23, 1889, P. L. 277, enacts, as to unpaid city taxes, that “It shah be the duty of the city treasurer .... to certify the said schedules and taxes, or a copy thereof to the city solicitor, who shah cause the said taxes, with the penalties thereon, to be registered in the name of the city and against the person or persons charged in the duplicate with the same, in the office of the prothonotary of the proper county, who shall keep a separate book for that purpose to be called the city lien-docket; and *56 all taxes assessed upon real estate shall be and continue to be liens thereon from the date of the levy thereof until paid;” and the twelfth section of said act contains a provision that the prothonotary shall be allowed a fee for each tax so registered, and that: “he shall also make searches and furnish transcripts or extracts from the register of taxes aforesaid, for which he shall be allowed the usual fees, to be paid by the party applying for the same.” These statutes were enacted at the same session of the legislature and should receive a construction, if possible, which will give effect to each. “Each is supposed to speak the mind of the same legislature, and the words used in each should be qualified and restricted, if necessary, in their construction and effect, so as to give validity and effect to every other act passed at the same session:” White v. City of Meadville, 177 Pa. 643. The provisions of the eleventh and twelfth sections of the act of May 23, 1889, do not merely invest the officers of a municipality with a discretion as to the registration of taxes which remain unpaid; they impose positive duties not only upon the officers of the city, but upon the prothonotary of the county. The provision that the prothonotary shall make searches and furnish transcripts from the register of taxes clearly indicates that it was the legislative intention that the register of taxes in the office of the prothonotary, “to be called the city lien-docket,” should be a public record which would afford notice to all parties of the existence of a lien for the taxes unpaid. The act of May 23, 1889, does not, it is true, fix any period within which the unpaid taxes must be registered, but the imposition of the positive duty to register is contained in the same sentence in immediate connection with the grant of a right of lien for the taxes while they remain unpaid. The Acts of May 4, 1889, P. L. 79, and May 23, 1889,-P. L. 277, are. not in conflict; the latter act requires that unpaid taxes shall be registered and the former provides that if they are not so registered within two years they shall cease to be a hen upon the land. The lien is the creature of statute and if the directions of the statute have not been complied with the right to the lien does not exist: Reading City v. Krause’s Estate, 167 Pa. 23. The effect of the provision of the act of *57 May 23, 1889, that the taxes shall continue to be hens upon real estate from the date of the levy thereof until paid, is to make such taxes a first hen; they must be first paid qut of the proceeds of any sale if such proceeds are sufficient to pay them and, if the proceeds of the sale are not sufficient to pay them, they continue to be a lien upon the land. The act of May 23, 1889, required the taxes in question to be registered in the office of the prothonotary and the act of May 4, 1889, limited the time within which they must be registered and regulated the proceedings which must be had subsequently to registration in the courts of the county, in order to continue the life of the lien. This being the effect of the legislation, it follows that the city had lost its lien for the taxes, for they were not entered of record in the office of the prothonotary within the period limited by the act of May 4, 1889, as amended by the Act of June 4,1897, P. L. 122.
The order of the court'below is reversed and the record is remitted with direction to make distribution in accordance with the foregoing opinion.